# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2016

Lyle W. Cayce
Clerk

No. 15-50606

---

KATHY CLARK, on behalf of herself and all others similarly situated; AMY
ENDSLEY, on behalf of herself and all others similarly situated; SUSAN
GRIMMETT, on behalf of herself and all others similarly situated;
MARGUERIETTE SCHMOLL, on behalf of herself and all others similarly
situated; KEVIN ULRICH, on behalf of himself and all others similarly
situated, et al,

Plaintiffs - Appellees

v.

CENTENE COMPANY OF TEXAS, L.P.,

Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-174

---

Before REAVLEY, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

In this case for unpaid overtime compensation under the Fair Labor
Standards Act, ("FLSA"), 29 U.S.C. §§ 201–219, defendant Centene Company
of Texas, L.P. ("Centene") appeals the district court's grant of summary
judgment in favor of plaintiffs, a group of former Case Managers employed by
Centene. Centene argues that the district court erred when it determined that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-50606

Case Managers did not fall within the "administrative" or "professional" exemptions of the FLSA's overtime requirements.  We AFFIRM.

## I. Background

Centene is a managed care company that helps coordinate health care coverage.  It manages and makes coverage determinations for its affiliate, Superior HealthPlan, Inc., an insurance company that contracts with the State of Texas to provide health insurance through government-sponsored programs.[1]  In managing Superior HealthPlan, Centene uses a process called "utilization review."  To perform this process, Centene hired Case Managers, who review medical authorization requests submitted by health care providers in order to verify the "medical necessity" and "appropriateness" of the request for insurance coverage and payment purposes.

In conducting utilization review, Case Managers were primarily expected to gather and examine admissions or health provider requests through on-site, telephonic, or internet review of medical information, and compare this information to guidelines made up of "nationally recognized criteria[2] to determine medical necessity of services requested."  Their responsibilities also included making referrals to their superiors (physicians known as Medical Directors), providing patient and provider education, and entering data related to assessments, authorizations, and reviews into Centene's systems.

Centene required Case Managers to: (1) hold a license as a registered nurse, practical nurse, or vocational nurse, and (2) have at least two years of

---

[1] Both Centene and Superior HealthPlan, Inc. are subsidiaries of Centene Corporation.

[2] Case Managers were instructed to use Centene's internal guidelines in performing utilization review, but if no applicable Centene guidelines existed, they were instructed to use industry standard guidelines.

No. 15-50606

clinical experience.  To become a registered nurse in Texas, one must complete an educational program between two and four years in length and pass a licensing examination.  *See* 22 TEX. ADMIN. CODE § 215.9(a)(1).  To become a vocational nurse,[3] one must complete a minimum of 558 hours of classroom instruction and 840 hours of clinical practice.  *See id.* § 214.9(a)(1).  Case Managers in plaintiffs' position generally earned between $934 and $1,335 per week, and Centene classified them as exempt from overtime requirements.

On February 22, 2012, five current and former Case Managers filed a claim against Centene in the Western District of Texas for recovery of overtime wages under the FLSA.  After the district court certified an opt-in class, other Case Managers employed by Centene between 2009 and 2012 joined the action.[4]

Both parties moved for summary judgment.  The district court denied Centene's motion and granted summary judgment in favor of plaintiff Case Managers, concluding that Case Managers were employees eligible for overtime pay.  The district court first resolved that Case Managers did not fall under the administrative exemption of the FLSA.  It determined that Case Managers did not perform work "directly related to the business operations" of Centene or its customer, the State of Texas and rejected Centene's claim that Case Managers were similar to insurance adjusters, who are exempt from FLSA overtime requirements.

---

[3] The terms "practical nurse" and "vocational nurse" are used interchangeably; Texas uses the term vocational nurse.  *See generally* 22 TEX. ADMIN. CODE § 214.1–.13.

[4] The specific job titles of the plaintiffs varied, but the basic requirements for each are the same.  The job titles used for employees performing utilization review included: Case Manager I (Concurrent Review), Case Manager I (Pre-Certification Nurse), Case Manager I (Prior-Authorization Nurse), and Case Manager.

No. 15-50606

The district court also held that Case Managers were not exempt under the professional exemption. The district court relied on a regulation promulgated by the Department of Labor ("DOL"), which states that vocational nurses "generally do not qualify as exempt learned professionals because possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations." 29 C.F.R. § 541.301(e)(2). It rejected Centene's argument that Case Managers nonetheless meet the exemption because they are required to have two or three years of clinical experience in addition to a vocational nurse's license.

The district court then held a bench trial regarding damages and entered final judgment for plaintiffs. Centene timely appealed.

## II. Discussion

Under the FLSA, employers must pay their employees overtime wages if employees work more than forty hours a week. *See* 29 U.S.C. § 207(a). However, the FLSA exempts from these overtime requirements "any employee employed in a bona fide . . . administrative[] or professional capacity." *Id.* § 213(a)(1). The DOL is authorized to promulgate rules interpreting and clarifying the FLSA's administrative and professional exemption.[5] *See id.*; *see also Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015).

Centene contends the district court erred in granting summary judgment in favor of plaintiffs, arguing that plaintiffs are exempt from the FLSA's overtime requirement as both administrative employees and learned professionals. We review a district court's ruling on summary judgment de novo, applying the same standard as the district court. *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 250 (5th Cir. 2012). FLSA exemptions are

---

[5] We defer to the DOL regulations if "they are 'based on a permissible construction of the statute.'" *Vela v. City of Houston*, 276 F.3d 659, 667 (5th Cir. 2001) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

4

No. 15-50606

construed narrowly, and the burden of proof lies with the employer. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006).

### A. The Administrative Exemption

Centene argues that the district court erred in concluding that Case Managers do not fall within the administrative exemption of the FLSA. The DOL's regulations define an administrative employee as an individual (1) who is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week";[6] (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The DOL regulations include specific examples of jobs that qualify for the administrative exemption. *See id.* § 541.203. For example, "insurance claims adjusters" generally fall within the administrative exemption and are thus not eligible for overtime pay. *Id.* § 541.203(a). By contrast, "[o]rdinary inspection work" generally does not fall within the administrative exemption because "[i]nspectors normally perform specialized work along standardized lines involving well-established techniques and procedures[,] which may have been catalogued and described in manuals or other sources." *Id.* § 541.203(g). "Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits." *Id.*

---

[6] The Department recently announced the finalization of a new overtime rule that changes the minimum salary to $913 per week, effective December 1, 2016. *See generally* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32,391 (May 23, 2016) (to be codified at 29 C.F.R. § 541.600(a)).

No. 15-50606

The DOL regulations also lay out several factors to consider when determining whether a job primarily includes the exercise of "discretion and independent judgment." 29 C.F.R. § 541.202(b). Centene argues that these factors favor the exemption of Case Managers. We disagree and conclude that Case Managers' primary duties do not include "the exercise of discretion and independent judgment with respect to matters of significance," *id.* § 541.200(a), and thus they do not meet the third prong of the administrative exemption.[7]

In support of its argument that Case Managers do meet the "discretion and independent judgment" prong of the administrative employee exemption, Centene points to our holding in *Cheatham*, contending that Case Managers' duties closely resemble the duties of insurance claims adjusters. In *Cheatham*, we considered many of the factors listed in the DOL regulations and concluded insurance claims adjusters qualify for the administrative exemption because they exercise discretion by

> determining coverage, conducting investigations, determining liability and assigning percentages of fault to parties, evaluating bodily injuries, negotiating a final settlement, setting and adjusting reserves based upon a preliminary evaluation of the case, investigating issues that relate to coverage and determining the steps necessary to complete a coverage investigation, and determining whether coverage should be approved or denied.

465 F.3d at 586.

---

[7] It is undisputed that Case Managers, in earning between $934 and $1,335 per week, exceed earnings of $455 per week and thus satisfy the first prong of the administrative employee exemption. Because we conclude that Case Managers do not meet the third prong of the administrative employee exemption, we need not address the second prong: whether their primary duties were the performance of office or non-manual work directly related to the management or general business operations of Centene or Centene's customers.

No. 15-50606

Case Managers employed by Centene exercise significantly less discretion than the insurance claims adjusters we described in *Cheatham*. For example, the first responsibility listed in Case Managers' various job descriptions is the duty of reviewing admissions or health provider requests for medical necessity and appropriateness, i.e. utilization review. This involves collecting and reviewing medical information and comparing the information to established guidelines to determine whether the request should be approved. If the request does not meet the established criteria, Case Managers did not have the authority to deny the request, but were instructed to refer the case to a Medical Director. This is a far cry from the discretion insurance claims adjusters exercised in *Cheatham*: Case Managers do not "advise[]" Centene, "represent[]" Centene in a significant way (other than possibly through in-office visits to collect medical information), or "negotiate[]" on Centene's behalf. *See Cheatham*, 465 F.3d at 585; *see also* 29 C.F.R. § 541.202(b).

Additionally, Centene's corporate representative testified that in performing utilization review, Case Managers used "clear guidelines to mak[e] a determination" and agreed that the job entailed "strictly applying the facts to the guidelines." Centene's policy stated that the purpose of the utilization review process was to promote "impartial and consistent utilization decisions." If Case Managers uncovered a request that had to be elevated to a Medical Director, Centene provided a checklist of items that were required to be included with the request. Centene also provided detailed steps for Case Managers to follow in conducting utilization reviews, and Case Managers were annually tested on their ability to "apply the medical necessity criteria to the clinical information that they review." In fact, Centene's entire utilization review process seems designed to minimize the amount of discretion and independent judgment employed by Case Managers.

No. 15-50606

Rather than acting analogously to insurance claims adjusters, Centene's Case Managers have responsibilities that more closely resemble "[o]rdinary inspection work," 29 C.F.R. § 541.203(g), a job that the regulations explicitly exclude from the administrative exemption. Case Managers, by examining medical information and applying it to utilization review guidelines, carry out inspector-type duties by performing "specialized work along standardized lines involving well-established techniques and procedures[,] which may have been catalogued and described in manuals or other sources." *Id.* § 541.203(g). In performing their duties, Case Managers must become familiar with medical documents, patient information, and health-related terminology, similar to the way inspectors "rely on techniques and skills acquired by special training or experience." *Id.* Moreover, the comprehensive guidelines that Case Managers must follow indicate that "[t]hey have some leeway in the performance of their work but only within closely prescribed limits." *Id.* § 541.203(g).

We conclude that Centene has failed to establish (or raise a material fact issue) that Case Managers' "primary duty . . . include[s] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). Accordingly, the district court did not err in its holding on this point.

### B. The Professional Exemption

In the alternative, Centene contends that the district court erred in finding that Case Managers do not fall within the professional exemption of the FLSA. The professional exemption applies when an employee's primary duty satisfies three elements: "(1) The employee must perform work requiring advanced knowledge; (2) The advanced knowledge must be in a field of science or learning; and (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). The regulations reference nurses specifically, stipulating that

8

No. 15-50606

registered nurses typically fall within the professional exemption, but licensed practical nurses "generally do not qualify as exempt learned professionals because possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations." *Id.* § 541.301(e)(2).

We conclude that Case Managers do not meet the third element of the professional exemption, because their advanced knowledge is not customarily acquired by a prolonged course of specialized intellectual instruction. Accordingly, we do not address the first or second elements of the learned professional exemption.

To satisfy the third element of the professional exemption, "specialized academic training [must be] a standard prerequisite for entrance into the profession." *Id.* § 541.301(d). Additionally, "[t]he best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." *Id.* Thus, the regulations distinguish between professions requiring high levels of education and instruction and "occupations in which most employees have acquired their skill by experience." *Id.*

As previously noted, the regulations are clear that licensed vocational nurses do not receive sufficient academic instruction to qualify as exempt learned professionals. *Id.* § 541.301(e)(2). Centene nevertheless contends that the additional two years of experience required of Case Managers distinguishes them from vocational nurses. However, in its most recent update of the regulations, the DOL explicitly rejected the relevance of experience to the analysis: "LPNs and other similar health care employees generally do not qualify as exempt learned professionals, *regardless of work experience and training*." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 Fed. Reg. 22,122, 22,153 (2004) (codified at 29 C.F.R. § 541) (emphasis added).

No. 15-50606

This commentary indicates that the two or three years of additional experience required to become a Case Manager are immaterial.

This conclusion is consistent with our prior case law addressing the professional exemption's applicability to positions in the medical field. *See Vela v. City of Houston*, 276 F.3d 659, 675 (5th Cir. 2001) (concluding that paramedics did not qualify for the professional exemption because they were only required to complete 880 hours of training, clinical experience, and field internships); *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 524–25 (5th Cir. 1999) (holding that athletic trainers satisfied the education requirement of the professional exemption because they were required to obtain (1) a bachelor's degree in any field; (2) 1800 hours of apprenticeship over a three-year period; (3) complete five 3-hour credit college courses in human health, anatomy, and physiology; and (4) pass a C.P.R. test). Qualification as a Case Manager requires, at a minimum, 558 hours of classroom instruction, 840 hours of clinical practice, and two to three years of additional clinical experience. These requirements more closely resemble those of the non-exempt paramedic in *Vela* than the exempt athletic trainer in *Owsley*.

Centene has failed to establish (or raise a material fact issue) that Case Managers meet the third element of the professional exemption. We therefore hold that the district court did not err in concluding that Case Managers fall outside of the professional exemption.

## III. Conclusion

FLSA exemptions are construed narrowly, and the burden lies with Centene to show that Case Managers are exempt from the FLSA's overtime requirement. *See Cheatham*, 465 F.3d at 584. Because Centene has failed to meet this burden, we AFFIRM.